UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

ECSTACY GAI,
o/b/o A.R.A.,

                                            Plaintiff,

      v.                                                           **DECISION AND ORDER**
                                                                             14-CV-498S

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                            Defendant.

———————————————————————

      1.      Plaintiff challenges an Administrative Law Judge's ("ALJ") determination on behalf of her child[1]. Plaintiff filed an application for Supplemental Security Income (SSI) benefits on November 29, 2010. The application was initially denied. On July 8, 2011, Plaintiff filed a written request for a hearing. Pursuant to Plaintiff's request, an administrative hearing was held before ALJ Timothy J. Trost on August 16, 2012, at which Plaintiff, A.R.A., and their attorney appeared. On October 17, 2012, the ALJ issued a decision denying the claim. On April 25, 2014, the Appeals Council denied Plaintiff's request for review. Thus, the ALJ's October 17, 2012 decision became the Commissioner's final decision.

      2.      On June 24, 2014 Plaintiff filed the current action challenging the Commissioner's final decision. On November 25, 2014, Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 8). On February 25, 2015, Defendant followed suit with her own motion. (Docket No. 12). Plaintiff filed a response on March 18, 2015. (Docket No.

---

[1] Plaintiff's child will be referred to as "A.R.A." throughout the decision.

1

13). For the following reasons, Defendant's motion is granted and Plaintiff's motion is denied.

3. A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

4. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's

determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

5. An individual under the age of 18 is considered disabled when he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act. See 20 C.F.R. § 416.924. Specifically, it must be determined: (1) whether or not the child has engaged in any substantial gainful activity; (2) if not, whether he or she has a "severe" impairment or combination of impairments that cause "more than minimal functional limitations;" and (3) whether his or her impairment or combination of impairments is of listing-level severity, in that it meets, medically equals, or functionally equals the severity of a listed impairment. See 20 C.F.R. § 416.924; see also 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").

6. Where an impairment medically meets or equals a listed impairment, the child will be found disabled. 20 C.F.R. §§ 416.924(d)(1); 416.925. If a child's impairment or combination of impairments does not meet or equal a listed impairment, the ALJ must assess all functional limitations caused by the child's impairments in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5)

caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926(a),(b)(1). A child is classified as disabled if he or she has a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when an impairment or the cumulative effect of impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i)). An "extreme" limitation "interferes very seriously" with that ability. 20 C.F.R. § 414.926a(e)(3)(i).

7. After applying the three-step evaluation in this case, the ALJ concluded that A.R.A. was an adolescent during the relevant period[2] and determined that (1) A.R.A. had not engaged in substantial gainful activity since November 29, 2010 (R. at 14); (2) A.R.A. had the severe impairment of a learning disorder and borderline intellectual functioning; and (3) A.R.A. did not have an impairment or combination of impairments which met or medically equaled an impairment contained in the Listing of Impairments. (R. at 14-15). In assessing all functional limitations caused by the child's impairments in terms of the six domains, the ALJ concluded that A.R.A.'s impairments did not functionally equal a listed impairment. Specifically: A.R.A. has a less than marked limitation in acquiring and using information, and A.R.A. has no limitation in: attending and complete tasks, interacting and relating with others, moving about and manipulating objects, the ability to care for oneself, and health and physical well-being. (R. at 19-25). Therefore the ALJ determined that A.R.A. did not have "marked" limitations in two domains or an "extreme" limitation in one domain of functioning. (R. at 15-26). Thus, the ALJ found that A.R.A. was not disabled and not entitled to benefits. (R. at 26).

---

[2] A.R.A. was born on March 20, 1998. (R. at 14).

4

8.      Plaintiff argues that the ALJ erred by relying on the opinion of A.R.A.'s sixth grade teacher, Ms. Jacobson, because her opinion with respect to the domains of Acquiring and Using Information, Attending and Completing Tasks, and Interacting and Relating with Others was contradicted by the "balance" of the child's school records, specifically highlighting A.R.A.'s Individualized Education Program plans ("IEP").[3] (Pl's Mem of Law at 17-21.) Plaintiff therefore argues that the ALJ's findings in these domains were not supported by substantial evidence.

Ms. Jacobson taught A.R.A in a sixth grade class with a student-teacher ratio of 15:1 for 10 months. (R. at 190). She indicated on the teacher questionnaire that A.R.A.'s level of instruction was at a fourth grade level for reading and written language, and a fifth-grade level for math. (R. at 190). Ms. Jacobson further indicated that A.R.A. had a slight problem in the domain of only acquiring and using information, indicating (pursuant to the form) that the child's functioning in all other domains "appears age-appropriate." (R. at 20, 191-92). The teacher also expressly commented that A.R.A. was a "wonderful young man who [she] enjoyed having in the classroom.," and it was her opinion that A.R.A.'s "disabling condition is directly related to his lack of previous exposure." (R. at 193, 197).

Teachers such as Ms. Jacobson are not medical sources whose opinions may be used to establish the existence of a disabling impairment. Nonetheless, they are "valuable sources of evidence for assessing impairment severity and functioning." See

---

[3] An agency providing special education and related services will develop an Individualized Education Program ("IEP") documenting the child's eligibility for services, the therapeutic or educational goals, the services the agency will provide, and the setting(s) where the agency will provide these services. See SSR 09-2P, 2009 WL 396032, at *5 (Feb. 18, 2009). The ALJ must consider the purpose of the goals provided in an IEP, whether the goals have been achieved, along with other relevant information in the case record, in making his/her determination. See SSR 09-2P, at *7.

Smith ex rel. D.R. v. Astrue, No. 10-CV-053 (GTS), 2011 WL 1113779 at *5 (N.D.N.Y. Jan. 20, 2011); see SSR 06–03p, 2006 WL 2329939, at *3 (Aug. 9, 2006). "Often, [teachers] have close contact with [students] and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." SSR 06–03p, 2006 WL 2329939, at *3. In fact, depending on the particular facts of the case, including the nature and extent of the relationship between the teacher and the claimant, it may be appropriate for an ALJ to give more weight to a teacher's opinion than to that of a treating physician. Id. at *5; see Anderson v. Astrue, No. 07-cv-4969, 2009 WL 2824584, *9 (E.D.N.Y. Aug. 28, 2009). In determining whether this would be appropriate, the ALJ must consider the consistency of the teacher's opinion to the other evidence in the record. Id.

9.    Here, in giving significant weight to the opinion of Ms. Jacobson, the ALJ expressly noted that this teacher was "well familiar" with A.R.A. "as she taught him in all academic subjects, for the entire 10 month academic school year." (R. at 19, 190.) Plaintiff contends that this was error where Ms. Jacobson's assertion that A.R.A. had only slight problems in Acquiring and Using Information is contradicted by statements in recent IEPs reflecting that the child continues to read below grade level, necessitating his continued placement in an intensive reading class, and that A.R.A. has trouble expressing more than simple sentences in writing. (R. at 159, 207-08). However, the ALJ discussed these IEP findings in his decision, but found more persuasive the child's noted significant improvement in reading, a problem area, specifically an increase from the 2.4 grade level for reading reported prior to the beginning of A.R.A.'s sixth grade year to a fourth grade level for reading and writing. (R. at 19.)   A.R.A.'s strength in math

was also highlighted in the decision. (R. at 17.) The ALJ further found that the teacher's opinion was "consistent with the testimony of [A.R.A.'s] mother who indicated that [A.R.A.] made significant improvement and performed well academically in sixth grade, since he had been placed in a proper 15:1 special education classroom setting." (R. at 19; see R. at 47-48 (Plaintiff's testimony that A.R.A.'s sixth grade year was "a really good turnaround," that the new classroom setting allowed him to go "from getting F's . . . to getting, like, a 91")).

Plaintiff further argues that the ALJ erred by failing to compare A.R.A.'s functioning with that of an average child. Initially, the fact that a child does or does not receive special education services does not establish that child's actual limitations or abilities. See 20 C.F.R. § 416.924a(b)(7)(iv). Children are placed in special education settings for many reasons that may or may not be related to the level of their impairments. Id. Further, here, the questionnaire completed by Ms. Jacobson expressly directed that she assess A.R.A.'s functioning by comparing his abilities to that of same-aged, unimpaired children. (R. at 190). The record also consistently reflects that, although he has the benefit of a more structured classroom environment, A.R.A. remains subject to the same state and district assessments as other general education students, and continues to participate in general education activities. (R. at 164, 167, 212, 313). Accordingly, there is no basis on which to conclude that the assessments in the record, and therefore the ALJ's conclusions based on those assessments, were not the result of a comparison of A.R.A.'s abilities to those of a child without functional limitations.

10. Plaintiff similarly argues that Ms. Jacobson's finding that A.R.A. had no problems in Attending and Completing Tasks is contradicted by references in the IEPs to the child's short attention span, attention-seeking behaviors, and the resulting need to be given testing accommodations. (R. at 151, 159, 163-64, 211-12). Again, the ALJ addressed these findings in his decision, but found that, in addition to Ms. Jacobson's opinion, a finding of no limitation in this domain was also supported by the examination of the consultative psychologist Dr. Santarpia. (R. at 21.) This consultative psychologist found that A.R.A.'s attention and concentration were intact and "age appropriate," as was the child's ability to "adequately maintain appropriate social behavior" and interact adequately with adults and peers. (R. at 21, 330-31.) The ALJ further noted that the consultative examiner's finding in this domain was adopted by the state agency reviewing psychologist. (R. at 21, 348.) Although Plaintiff relies on a 2005 suggestion by a school psychologist that A.R.A. be tested for Attention Deficit Hyperactivity Disorder ("ADHD") (R. at 289), the ALJ expressly considered this possibility and accurately concluded that there was neither a diagnosis from a treating or examining medical source nor evidence of any treatment for ADHD. (R. at 14.)

11. Plaintiff further contends that Ms. Jacobson's assertion that A.R.A. had no problems in Interacting and Relating to Others is contradicted by the school's need to have a behavioral plan in place for the child. (Pl's Mem at 20-21). Plaintiff asserts that, in addition to attention-seeking behaviors, the "behavioral intervention plan was established because [A.R.A.] was physically aggressive towards his peers, he was threatening, and he was insubordinate to staff." (Id. (citing R. at 319-20)). This statement is misleading, inasmuch as it is based on a limited reference in a 2010

behavioral plan which indicates it was for A.R.A.'s third grade year. (R. at 319-20). In contrast, there is no reference to physical aggression in the child's IEPs. Instead, as recognized by the ALJ, although indicating that he still engages in disruptive behavior, these plans reflect that he is "well liked by peers and adults," (R. at 22-23; R. at 207), and his immature behavior only "mildly interferes" in the classroom, where he "wants to help" and "will help others." (R. at 22-23; R. at 168, 151, 314). Further, the ALJ also relied on A.R.A.'s own testimony that he has friends and gets along well with others, as well as evidence that he participates in sports. (R. at 23, 44, 50-51, 109, 311.)

Accordingly, this Court finds that the ALJ's decision to give significant weight to Ms. Jacobson's opinion is adequately explained in the decision and supported by substantial evidence.

12. After carefully examining the administrative record, this Court finds that substantial evidence supports ALJ Trost's decision, including the objective medical evidence and medical opinions contained therein. This Court is satisfied that ALJ Trost thoroughly examined the record and afforded appropriate weight to all of the evidence in rendering his decision that A.R.A. is not disabled within the meaning of the Act. Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking similar relief.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: August 30, 2015
       Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge